UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROSEMARY COVALT, § | |
| § | |
| Plaintiff, § | |
| v. § | |
| § | CIVIL ACTION NO. H-07-1595 |
| JO ANN MARIE PINTAR and § | |
| HOUSTON FEDERATION OF § | |
| TEACHERS LOCAL 2415, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Remand. After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 6, should be **DENIED.**

Plaintiff Rosemary Covalt is an employee of Defendant Houston Federation of Teachers Local 2415 ("HFT"), and a member of Teamsters Local Union No. 968. According to Plaintiff, she experienced sexual and racial harassment by a HFT co-worker, Jo Ann Marie Pintar, on numerous occasions.[1] Plaintiff alleges that these incidents were reported to HFT management but that no disciplinary measures were taken, at least in part because Pintar "enjoyed an unusual level of attention and protection from HFT's president, Gayle Fallon." Pl.'s Original Pet. 2. Due to HFT's inaction, Plaintiff asserts that she became isolated in the workplace and suffered mental and physical harm.

Plaintiff filed the instant lawsuit in state court, bringing claims for hostile work environment, discrimination in violation of the Texas Constitution and the Texas Labor

---

[1] Pintar was originally named as a defendant in this suit, but was voluntarily dismissed by Plaintiff. *See* Docket No. 7.

1

Code, intentional infliction of emotional distress, and assault and battery.  The suit seeks "actual and consequential" damages, punitive damages, attorney's fees, and injunctive relief against Defendant HFT.  Defendant removed the case in May 2007, arguing that because Plaintiff's employment with HFT is governed by a collective bargaining agreement between HFT and the Teamsters, her claims are preempted by Section 301 of the Labor Management Relations Act.  Plaintiff now moves to remand her suit to state court.  Plaintiff contends that her case proceeds exclusively on state law causes of action that do not require interpretation of the collective bargaining agreement, and which therefore escape preemption.

  The Court agrees that the LMRA preempts Plaintiff's claims.  Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ."  29 U.S.C. § 185(a) (2006).  "A state tort claim is preempted by section 301 if evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."  *Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 279 (5th Cir. 1994).  The purpose of Section 301 preemption is to "ensure that issues raised in actions covered by section 301 are decided in accordance with the precepts of federal labor policy."  *Id.*

  Federal preemption is not unlimited, however.  "[C]laims only tangentially involving provisions of collective-bargaining agreements are not preempted by section 301."  *Thomas v. LTV Corp.*, 39 F.3d 611, 617 (5th Cir. 1994).  The first step in determining whether a plaintiff's tort claims are subject to LMRA preemption is to

2

examine the elements of the torts themselves.  *See, e.g.*, *Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1089 (5th Cir. 1991).  The critical inquiry then concerns "the necessity of looking to the terms of a CBA to resolve the state law claim[s]."  *Baker*, 34 F.3d at 280.

There are three claims principally at issue[2]: intentional infliction of emotional distress, hostile work environment, and discrimination under the Texas Labor Code.[3]  To prevail in a suit for intentional infliction of emotional distress in Texas, a plaintiff must show: 1) intentional or reckless conduct; 2) that is extreme or outrageous; 3) that caused emotional distress; and 4) that was severe in nature.  *Burden v. General Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir. 1995).  The elements of a hostile work environment/sexual harassment claim are: 1) plaintiff belonged to a protected class; 2) was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 393 (5th Cir. 2007).  Finally, to make out a claim of discrimination under the Texas Labor Code, Plaintiff must prove that she 1) was a member of a protected class; 2) suffered an adverse employment action; and 3) was treated dissimilarly from non-protected employees.  *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996).

---

[2] The Court assumes that it need not address Plaintiff's claims for assault and battery and violation of the Equal Rights Amendment of the Texas Constitution.  Plaintiff has voluntarily dismissed Pintar, presumably the only defendant against whom a claim for assault and battery would lie.  Further, HFT is correct in noting that Plaintiff's ERA claim appears to be deficient, in that it alleges no "state action or private conduct that is encouraged by, enabled by, or closely interrelated in function with state action."  *Junior Football Ass'n v. Gaudet*, 546 S.W.2d 70, 71 (Tex. App. 1976).  Plaintiff herself does not discuss these claims in her Motion to Remand.

[3] In her Motion to Remand, Plaintiff does not identify discrimination as a cause of action in her suit, nor does she discuss the elements of a discrimination claim.  However, the original petition at least gestures towards a claim for discrimination in violation of the Texas Labor Code.  Pl.'s Original Pet. 5.  For the sake of completeness, the Court will address a possible cause of action for discrimination.

3

The Court notes generally that each of these claims against Defendant HFT stems from its alleged failure to end Pintar's harassment of Plaintiff, specifically by disciplining her. Unwillingness to discipline is the only wrongful conduct that Plaintiff imputes to HFT in her original petition. *See* Pl.'s Original Pet. 2-4 ("Fallon [failed] to take remedial action against [Pintar] for misconduct in the workplace that has created a hostile work environment for [Plaintiff] as the following examples will show"; "Fallon failed to take any substantive action to maintain a comfortable work environment free of harassment, threats, and retaliation"; "Fallon's failure to take substantive corrective, remedial action has emboldened [Pintar] and other HFT workers to isolate [Plaintiff] in the workplace"; "[HFT] knew or should have known of the harassment and failed to take the appropriate remedial action.").

Discipline of HFT employees is governed by Article XII of the CBA between HFT and Plaintiff's union, the Teamsters. Section 1 of the Article states that "[t]here shall be no discipline, except for just cause," and sets forth a list of circumstances defining just cause, including "[o]ther just cause as defined by the HFT Personnel Policies Handbook." Pl.'s Mot. Remand, Ex. 5 at 7 [hereinafter "CBA"]. Article XII also sets forth a variety of other policies regarding employee discipline. For example, "[d]isciplinary action shall not be taken based solely on hearsay or anonymous complaints. HFT has the right to investigate complaints based on hearsay or anonymous reports." *Id.* at 8. In the Court's view, each of Plaintiff's claims stemming from HFT's supposed failure to discipline will require analysis of the CBA's provisions regarding just cause and disciplinary procedure. Therefore, it appears that her state law claims must be preempted. *See, e.g.*, *Alvararez v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, (N.D.

Tex. 2005) (preempting a claim for negligent supervision and control of employees who engaged in allegedly discriminatory conduct, because "in determining whether UPS had a duty and/or breached any duty of proper supervision, it would be necessary to consider the disciplinary provisions of the CBA.").

The Court's ruling is in line with case law in this circuit, which strongly favors preemption. For example, claims for intentional infliction of emotional distress are almost always preempted in the context of an employment dispute. *See, e.g.*, *Stafford v. True Temper Sports*, 123 F.3d 291, 296 (5th Cir. 1997) ("Regarding intentional infliction of emotional distress, this Circuit has stated that the 'LMRA preempts state-law emotional distress claims if those claims are related to employment discrimination.'") (citation omitted). In asserting a claim for IIED, a plaintiff has the burden of proving wrongful conduct by the employer; the Fifth Circuit has expressed the view that "[t]o determine whether [the employer's] conduct was wrongful under the circumstances, an analysis of the collective bargaining agreement is necessary." *Thomas*, 39 F.3d at 619; *see also Reece*, 79 F.3d at 487 ("In order to evaluate whether [the employer's] conduct was 'outrageous,' the conduct must be measured against the CBA."). In this case, determining whether HFT's inaction with regard to Pintar was wrongful would require an analysis of the disciplinary provisions of the CBA, therefore preempting Plaintiff's state law claim.

Employment discrimination claims are also regularly preempted. If Plaintiff is able to establish a *prima facie* case of discrimination,[4] HFT would then have the burden to articulate a legitimate, non-discriminatory reason for the allegedly unequal treatment,

---

[4] The Court observes that Plaintiff has not yet identified any adverse employment action taken against her by HFT.

for which it would undoubtedly rely on the CBA.  *Reece*, 79 F.3d at 487.  For example, the CBA confers on HFT management "the exclusive right to manage the operations of HFT," including "the right to hire, promote, suspend, discipline or discharge."  CBA at 1.  The CBA also governs promotions, wages, seniority, benefits, and employee welfare.  Analyzing a claim for employment discrimination would almost certainly involve examination of these provisions.  Plaintiff's discrimination claim is properly preempted.  *See, e.g.*, *Korndoffer v. W. States Fire Prot. Co.*, No. Civ.A.SA-04-CA-0944, 2004 WL 2750231, at *5 (W.D. Tex. Dec. 2, 2004) (preempting age discrimination claim because "[t]he parties will be required to interpret Article 5 of the CBA to determine if Plaintiff was properly selected for lay off, whether 'local' employees were entitled to a preference, and what recall rights Plaintiff enjoyed.").

Finally, Plaintiff's claims are not among those that escape preemption because they allege outrageous conduct not condoned by a CBA.  *See, e.g.*, *Baker*, 34 F.3d at 280 ("If the [CBA] would not condone the activity, there is no preemption."); *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 802 (6th Cir. 1990) ("claims premised upon abusive behavior above and beyond the routine exercise of CBA rights are not preempted.").  Plaintiff's underlying harassment by Pintar would certainly, if proven true, constitute abusive and outrageous conduct.  *Against HFT*, however, Plaintiff's claims arise from the failure to discipline, which is clearly governed by provisions in the CBA.  *See Baker*, 34 F.3d at 281-82 (distinguishing between claims against an employer that require interpretation of a CBA, and claims that arise directly from abusive behavior and are not preempted).

Plaintiff contends in the Motion to Remand that her causes of action do not invoke the CBA, but rather rely only on HFT's General Policies. Plaintiff points to the fact that the General Policies, but not the CBA, contain a section specifically addressing sexual harassment. Pl.'s Mot. Remand, Ex. 4 at 14 [hereinafter "Policies"]. This argument is unavailing. First, the CBA and General Policies do not exist independently of one another. The disciplinary provisions of the CBA, which are central to this case, specifically reference the Policies in defining "just cause" for employee discipline. CBA at 7. Furthermore, only the CBA, not the Policies, confers a contractual and exclusive right on HFT to discipline employees. CBA at 1. Finally, the Policies themselves state that "[t]his handbook represents current policies and procedures of HFT and is not intended to be a contract between the local and its employees," and that "[i]n matters of contradiction between the personnel policies and the contract, the contract supersedes." Policies at 1. The Court finds that notwithstanding the existence of the Policies, adjudication of Plaintiff's claims will require substantial analysis of the CBA, and that Plaintiff's state law causes of action are therefore preempted.

The Court need not address Defendant's remaining arguments regarding federal question. Plaintiff's Motion to Remand is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 29th day of June, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**