## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ROSEMARY COVALT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. H-07-1595** |
| **JO ANN MARIE PINTAR and** | § | |
| **HOUSTON FEDERATION OF** | § | |
| **TEACHERS LOCAL 2415,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss, Doc. No. 43. For the following reason, Defendants' Motion is **DENIED IN PART AND GRANTED IN PART**. Plaintiff's claims against Defendant Pintar are **DISMISSED** without prejudice. Plaintiff's breach of contract claim and claim for intentional discrimination under Title VII and Section 1981 against Defendant Houston Federation of Teachers is **DISMISSED**. The Court will not dismiss, however, Plaintiff's Title VII and Section 1981 claims for hostile work environment and retaliation brought against Defendant Houston Federation of Teachers.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff Rosemary Covalt is an employee of Defendant Houston Federation of Teachers Local 2415 ("HFT"), and a member of Teamsters Local Union No. 968. According to Plaintiff, she experienced sexual and racial harassment by an HFT co-worker, Jo Ann Marie Pintar, on numerous occasions. Plaintiff maintains that, even after she filed a grievance pursuant to the Collective Bargaining Agreement (CBA) and settled the grievance with management, the harassment continued. Furthermore, Plaintiff contends that HFT management and co-workers

retaliated against her for complaining about the harassment and for filing a charge with the EEOC.

Covalt provides several specific examples of the alleged harassment. Covalt maintains that Pintar "would grab and squeeze other co-worker's [sic] buttocks and the breasts of female HFT employees," including Plaintiff. (Second Am. Compl.¶ 9-10.) She alleges that Pintar once "aimed a pen in the crotch of an unsuspecting HFT co-worker and then pretended to smell the pen." (*Id.*) Covalt also maintains that Pintar would curse and make "vulgar and derogatory remarks towards minorities, especially Mexican-Americans" at the workplace. (*Id.* at ¶ 11.) For example, Covalt alleges that Pintar once stated, when discussing work that Pintar was doing for Hurricane Katrina victims, "that Pintar 'had to take care of her Mexicans.'" (*Id.*)  Covalt additionally alleges that Pintar declared that Covalt had a good relationship with a vendor "because of her 'pretty face and body'" in front of male co-workers and that when a male union representative said he was multi-tasked, Pintar responded by asking, "Does that mean you can breathe and masturbate at the same time?"[1] (*Id.*)  Covalt contends that comments such as these, "based either on sexual comments or racial and ethnic slurs against Hispanics," were an everyday occurrence at her job. (*Id.*)

Plaintiff claims that these incidents were reported to HFT management, but management did not take disciplinary measures, at least in part because Pintar "enjoyed an unusual level of attention and protection from HFT's president, Gayle Fallon." (Second Am. Compl. ¶ 8.) Plaintiff asserts that, due to HFT's inaction, Pintar and other co-workers were emboldened, and that Plaintiff became isolated in the workplace. (*Id.* ¶ 13.) Covalt additionally maintains that Fallon's indifference to Plaintiff's complaints allowed, among other things, "vulgar and pornographic e-mails" to proliferate at the HFT workplace. (Id. ¶ 13.)

---

[1] These alleged comments were made prior to December 2005.

On December 5, 2005, Plaintiff filed a Charge of Discrimination with the Texas Civil Rights Division.[2] Plaintiff also bought a grievance against Defendant HFT pursuant to the CBA. The grievance was settled on December 13, 2005.  Pursuant to the settlement, management agreed to tell staff to cease all sexual, ethnic, or racial remarks or actions in Plaintiff's presence and to review the Office Decorum Policy with all staff.  (Second Am. Compl. ¶ 17; Doc. No. 43, Ex. 2F.)  Defendant HFT also conducted an investigation and informed Plaintiff, among other things, that late night duties would be reassigned to ensure that she and Ms. Pintar would have less work-related contact with each other and to ensure that she and Ms. Pintar were not assigned to the same night.  (Second Am. Compl. ¶ 18, Doc. No. 43, Ex. 2H.)

Plaintiff alleges that Defendants began violating the settlement agreement within one month of its being entered, retaliated against her for complaining about harassment and for filing the EEOC charge, and recreated a hostile workplace.  (Second Am. Compl. ¶ 20; Pl.'s Resp. 14.) Specifically, Plaintiff claims that HFT President Fallon began assigning her more work than other employees, began micro-managing and strictly disciplining her for minor infractions, refused to intervene when other workers began ostracizing her, and refused to intervene when Plaintiff complained about ongoing harassment by Pintar.  (Second Am. Compl. ¶ 20.)  Plaintiff also contends that HFT continued to assign Pintar to the same late duty night as Covalt.  (*Id.*) According to Plaintiff, Defendant Pintar continued making false accusations against Plaintiff, and Fallon also singled out Plaintiff for reprimands and investigations, "making numerous inquiries to school principals and others for whose union affairs Plaintiff has responsibilities."[3] (*Id.*)

---

[2] The EEOC issued a Notice of Right to Sue in January 2007.
[3] Plaintiff also alleges that Pintar caused her bodily injury and/or caused physical contact with Plaintiff knowing that such contact would be considered offensive and provocative. Covalt additionally asserts that Pintar "attempted to commit and/or committed acts during the course and scope of her employment that were intended by her to result in

## B.    Procedural History

In March 2007, Plaintiff filed suit in state court against both HFT and Pintar, bringing claims for hostile work environment, discrimination in violation of the Texas Constitution and the Texas Labor Code, intentional infliction of emotional distress, and assault and battery. Defendants removed the case in May 2007, and this Court denied Plaintiff's Motion to Remand, finding that Plaintiff's state law claims required interpretation of the terms of the collective bargaining agreement (CBA) and were thus preempted by the Labor Management Relations Act. Upon removal, Plaintiff voluntarily dismissed her claims against Pintar. *See* Docket No. 7.

After Defendant HFT filed a Motion to Dismiss, the Court granted Plaintiff's request to amend her complaint.  Plaintiff's First Amended Complaint re-alleged hostile work environment and discrimination claims under the Texas Labor Code.[4]  After Defendant HFT again filed a Motion to Dismiss, Plaintiff sought leave to file a Second Amended Complaint adding a claim for breach of the collective bargaining agreement.  Shortly thereafter, the Court discovered that Plaintiff had attempted to sue Pintar in state court once again after voluntarily dismissing her from this lawsuit.  Just as before, Defendant Pintar successfully removed the case to federal court, and Pintar's case was consolidated with this lawsuit.  Pintar filed a motion adopting the arguments of Defendant HFT's Motion to Dismiss.

At a hearing on Defendants' second Motion to Dismiss and Plaintiff's Motion to File Second Amended Complaint, the Court noted that the proposed Second Amended Complaint did not include claims against Ms. Pintar.   The Court allowed Plaintiff to submit yet another

---

physical harm, bodily injury, assault, or sexual assault or were threats that reasonably placed Covalt in fear" of such harm.  (*Id.* ¶ 15.)  Plaintiff claims that Defendant HFT knew of these incidents, allowed them to continue, and ratified the wrongful conduct by failing to take remedial action.  Plaintiff appears to assert these acts as additional factual evidence in support of her discrimination and harassment claims, and does not explicitly plead tort claims for assault and battery.  Neither party addressed any possible tort claims against Ms. Pintar in briefing on the pending motion.

[4] Plaintiff removed the other causes of action alleged in her state petition.

amended complaint alleging claims against Pintar and adding federal discrimination claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. At that same hearing, the Court noted that Defendants had incurred considerable costs due to Plaintiff's amendments and decision to re-file a state lawsuit against Pintar, and informed the parties that it would consider assessing attorneys' fees and costs.

## II.    ANALYSIS

### A.    Motion to Dismiss Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6) (2008). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

Defendants have attached several documents to their Motion to Dismiss that were not filed with Plaintiff's Complaint. Although the Court generally considers a motion to dismiss for failure to state a claim based on the face of the Complaint, "the court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim." *Kane v. McGregor*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). As in *Collins*, with one

exception, Plaintiff does not object to the inclusion of these documents.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### B.    Grievance, Arbitration, and Preemption of Statutory Claims

Defendants contend that Covalt's Title VII and Section 1981 claims are preempted by Section 301 of the Labor Management Relations Act.  In denying Plaintiff's Motion to Remand, the Court found that Plaintiff's *state* law claims were preempted.  However, "[t]raditional preemption analysis does not apply in a conflict between two federal statutes."  *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1447 (5th Cir. 1992) (noting that the Fifth Circuit has held that claims under Title VII are not preempted by the National Labor Relations Act); *see also Citchens v. Bellsouth Telecommunication, Inc.*, No. 2:96CV33-B-B,  1997 WL 570855, at *2 (N.D. Miss. Sept. 3, 1997) ("[T]he plaintiff has asserted claims for violation of federal law, rather than state law, and thus the doctrine of preemption under the LMRA does not apply.").  Plaintiff's Title VII or Section 1981 claims are not, therefore, preempted by the LMRA.

Defendants also argue that Plaintiff's Title VII and Section 1981 claims should be dismissed because the CBA requires Covalt to pursue any such claim through the grievance and arbitration process.  The Court does not agree that Plaintiff was required to pursue those claims through the grievance and arbitration provision of the CBA.

Neither the Supreme Court nor the Fifth Circuit has decided whether a union can waive an employee's statutory right to a federal forum through an arbitration or grievance provision of a collective bargaining agreement.  *See Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 72-74 (1998) (declining to resolve tension between the Court's holdings in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).  The Supreme Court has held, however, that it would not infer that a party

intended to waive a statutorily protected right where that waiver was not "clear and unmistakable." *Wright*, 525 U.S. at 80. Defendants urge the Court to follow Fourth Circuit precedent on this issue. The Fourth Circuit has held that a "union-negotiated CBA may waive an employee's statutory right to litigate his employment discrimination claims in a judicial forum" if that waiver is clear and unmistakable. *Eastern Associated Coal Corp. v. Massey*, 373 F.3d 530, 533-34 (4th Cir. 2004) (noting that "it is not easy" to meet the clear and unmistakable waiver standard). Under Fourth Circuit precedent, a clear and unmistakable waiver can occur if a CBA contains "an explicit arbitration clause in which the parties agree to submit to arbitration all federal causes of action arising out of employment" or if the agreement contains a "general clause requiring arbitration under the agreement . . . coupled with a provision which makes 'unmistakably clear that the discrimination statutes at issue are part of the agreement . . . .'" *Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001) (citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 332 (4th Cir. 1999).

In *Safrit*, the court found that a CBA did meet the "clear and unmistakable waiver" standard because the contract included a clause declaring that the parties agreed to "abide by all the requirements of Title VII" and that "[u]nresolved grievances under this Section are the proper subjects for arbitration." 248 F.3d at 308; *see also Martinez v. Asset Protection & Sec. Services, L.P.*, No. Civ. A. B-05-241, 2006 WL 2871852, at *1, *3 (S.D. Tex. May 9, 2006) (following *Safrit* and finding a clear and unmistakable waiver where a CBA included a clause that declared: "It is expressly understood and agreed . . . that this Agreements [sic] incorporates all applicable federal . . . anti-discrimination statutes, and that any claims of discrimination . . . including those based on federal . . . statutes shall be subject to this Article as the exclusive means of redress."). By contrast, the Fourth Circuit has held that agreements containing a general anti-discrimination

clause and an arbitration clause providing for "arbitration of any disputes regarding the meaning of the CBAs" or referring to "all grievances or questions of interpretation arising under this . . . Agreement" do not meet the clear and unmistakable waiver standard.  *See Eastern Associated Coal Corp.*, 377 F.3d at 534 (discussing *Carson*, 175 F.3d at 332 and *Brown v. ABF Freight Sys., Inc.*, 183 F.3d 319, 320 (4th Cir. 1999).

Even  if the Court were to follow *Safrit*, it would find that the CBA provisions at issue in this case do not meet the clear and unmistakable waiver standard set forth in that case.  The CBA contains only a generic anti-discrimination clause that makes no mention of federal anti-discrimination statutes.  (CBA Art. XVII.)  The grievance and arbitration provision does not define a grievance, and refers only to resolving "the differences arising as to the interpretation of application for [sic] the terms of this Agreement."  (CBA Art. XIII.)  These provisions do not even approximate the clear language of the agreements at issue in *Safrit* and *Martinez*, and are instead more similar to those at issue in *Brown* and *Carson*, which the Fourth Circuit found did not meet the clear and unmistakable waiver standard.  The Court does not find, therefore, that the CBA requires Plaintiff to grieve or arbitrate her Title VII or Section 1981 claims, and Plaintiff was not required to exhaust CBA remedies before filing suit for violations of these statutes.  *See, e.g., Terrazas v. Medlantic Healthcare Group, Inc.*, 45 F.Supp.2d 46, 51 (D.D.C. 1999) (finding that a Plaintiff was not required to exhaust a CBA's grievance procedure before bringing a Title VII claim because the agreement did not include a clear and unmistakable waiver); *Prince v. Coca-Cola Bottling Co. of New York, Inc.*, 37 F. Supp. 2d 289 (S.D.N.Y. 1999) (denying Defendant's motion to stay proceedings in a Title VII action pending exhaustion of grievance and arbitration remedies because the CBA did not contain a clear and unmistakable waiver of federal forum rights).

### C.     HFT's Status as Employer

Defendant HFT argues that it did not have the requisite number of employees to be considered an "employer" for purposes of Title VII.[5]  *See* 42 U.S.C. §2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."). In support of this argument, Defendant provides a declaration from HFT President Gayle Fallon stating that, based on payroll records, HFT did not employ the number of employees required by 42 U.S.C. 2000e(b).  (Doc. No. 43, Ex. 4.)  This is not a document that was referenced by Plaintiff that is central to Plaintiff's claim.  *See Kane v. McGregor*, 322 F.3d 371, 374 (5th Cir. 2003).  Plaintiff argues that she should be allowed to complete discovery before the Court rules on this matter.  The Court will not consider this declaration or treat Defendant's motion as to this issue as one for summary judgment.  *See* FED. R. CIV. P. 12(b).  Defendant will be free to re-assert this argument in any future motion for summary judgment.

### D.     Individual Liability of Defendant Pintar

The Court agrees that Plaintiff may not maintain Title VII or Section 1981 claims against Ms. Pintar as an individual.[6]

The Fifth Circuit has clearly held that "there is no individual liability for employees under Title VII." *See, e.g., Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002).  "It is not clear," however, "whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to the claim." *Felton v. Polles*, 315 F.3d 470, 480 (5th Cir. 2002) (declining

---

[5] HFT's assertion that this requirement is jurisdictional is incorrect. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) ("[T]he numerical threshold does not circumscribe federal-court subject-matter jurisdiction. Instead, the employee-numerosity requirement relates to the substantive adequacy of [a plaintiff's] Title VII claim.").

[6] As explained, *infra*, Part II.D.3, the Court finds that that Plaintiff has failed to state a claim for intentional discrimination. Thus, this analysis pertains only to Plaintiff's retaliation and hostile work environment claims.

to decide the issue). In *Faraca v. Clements*, the Fifth Circuit held that the director of a state entity could be individually liable under Section 1981 for interfering with Plaintiff's right to contract with the state. 506 F.2d 956, 959 (5th Cir. 1975). The Fifth Circuit subsequently distinguished *Faraca*, observing that the director was "only nominally a third party" and noting that "because he was acting on behalf of the state when he decided not to hire [plaintiff]—thus making his hiring decision indistinguishable from that of the state—the director and the state were essentially the same." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). In *Felton*, the Fifth Circuit concluded that "In light of *Bellows*' limited reading of *Faraca*, it would appear [an individual defendant] could only be amendable to § 1981 liability if he were 'essentially the same' as the State for purposes of the complained-of conduct," but did not hold on those grounds. 315 F.3d at 480-81 (finding defendant not liable on grounds of qualified immunity). In *Foley v. University of Houston System*, the Fifth Circuit again allowed a plaintiff to pursue Section 1981 retaliation claims against individual defendants, but only because the court found a genuine issue of material fact as to whether the defendants "exercised control" over the positions and titles that were denied or affected, making the defendants "essentially the same" as the employer for purposes of the retaliatory conduct. 355 F.3d 333, 337 (5th Cir. 2003).

It is undisputed that Pintar, Plaintiff's co-worker, was not a party to Plaintiff's employment contract, and there is no allegation that Pintar was "essentially the same" as Defendant HFT when engaging in the alleged retaliatory or harassing acts. Furthermore, in *Felton*, the Fifth Circuit observed that the prima facie case requirement for hostile work environment requires that a plaintiff show, among other things, that "the employer knew or should have known of the harassment in question and failed to take prompt remedial action," and

declared that this element "presents an obvious incongruity for a § 1981 claim against an individual." *Felton*, 315 F.3d at 483. The court acknowledged that where harassment is committed by a supervisor with immediate authority over the harassment victim, the plaintiff need not satisfy this element. *Id.* (citing *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th Cir. 2001). In reaching that conclusion, however, *Celestine* relied on the Supreme Court's holding in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), that an employer could be vicariously liable for actionable hostile environment created by a supervisor. Nothing in these cases provides any support for the proposition that an individual co-worker can be held liable for retaliation or actions creating a hostile work environment where the co-worker was not "essentially the same" as the employer.

Although some circuits have allowed plaintiffs to pursue claims against individual defendants if the plaintiff can show, for example, "some affirmative link to casually connect the actor with the discriminatory action," *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2nd Cir. 2000), that the defendant "intentionally cause[d] an infringement of rights protected by Section 1981," *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986), or that the defendant was "personally involved" in the discriminatory conduct, *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), this Circuit has not yet indicated an inclination to define individual liability under Section 1981 so broadly. Furthermore, several courts have found that even if individual liability under Section 1981 might lie against a supervisor that was personally involved in discriminatory action, a plaintiff may not bring a claim under the statute against a co-worker. *See, e.g., Miller v. Wachovia Bank, N.A.*, No. 3:07-CV-1269-D, 2008 WL 657391, at *5-*8 (N.D. Tex. Mar. 7, 2008) (discussing several district court and circuit cases

and noting that "the cases that have addressed the issue suggest that a § 1981 suit against a mere coworker is invalid.").

Plaintiff has not alleged that Defendant Pintar was "essentially the same" as Defendant HFT, and has not presented the Court with any other persuasive arguments for holding Pintar individually liable as a co-worker for her alleged discriminatory or retaliatory actions. Plaintiff's Title VII and Section 1981 claims against Pintar are, therefore, dismissed.

### E.    Allegations of Race Discrimination

Defendants also argue that Plaintiff has not stated a claim for race discrimination based on her Hispanic ethnicity and that her Section 1981 claims should therefore be dismissed.

Defendants first point out that Plaintiff did not check a box alleging race discrimination on her EEOC charge. Although Plaintiff was required to exhaust administrative remedies before bringing a claim under Title VII by filing a charge of discrimination with the EEOC, her EEOC charge has no direct bearing on her Section 1981 claim. *See* 42 U.S.C. §§ 200e-5(a), (e); *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (noting that Title VII, but not Section 1981, requires exhaustion of administrative remedies); *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). Defendants do not claim that Plaintiff is limited to the allegations made in her EEOC charge when bringing a Section 1981 claim, but instead point to the charge as evidence that Plaintiff has never actually alleged that Defendants were discriminating against her on the basis of race, and instead has only maintained claims of discrimination based on sex and national origin.

In her EEOC Charge, Plaintiff only checked the "national origin" and "sex" boxes when defining the basis on which the alleged discrimination occurred. (Doc. No. 43, Ex. 3.) In the written section of the charge, however, Plaintiff explained that she and other employees had been

"subjected to wanton undignified *racial* and sexual treatment," and noted that she had complained to management about "*racist* statements." (*Id.* (emphasis added))  The Fifth Circuit has noted that the factual statement of the EEOC charge is the "crucial element of a charge of discrimination" and that "the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged." *Sanchez v. Standard Brands*, 431 F.2d 455, 462 (5th Cir. 1970).  The Court concludes that, despite her failure to check the "race" box, Plaintiff's EEOC charge does support her allegation that she was being discriminated against or harassed because of race.

Defendants also argue that Plaintiff has not pled facts that would show that she, Ms. Fallon, and Ms. Pintar are of a different race.  The Court notes, first, that it is possible for individuals of the same race to discriminate against or harass one another based on race.  *See, e.g.*, *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).  Defendants also appear to argue that Plaintiff has not shown that she is of a different race than her allegedly differently-treated co-workers.  Namely, Defendants suggest that although Plaintiff may be Mexican and Hispanic, her race should still be considered "white" or Caucasian.

For purposes of Section 1981, the Court believes that this is a distinction without a difference.  In *Saint Francis College v. Al-Khazraji*, the Supreme Court found that in enacting Section 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  Although the Court also observed that discrimination based "solely on the place or nation of [a plaintiff's] origin was not actionable under § 1981, it also defined race discrimination very broadly. *Id.* at 610-13 (noting "[p]lainly all those who might be deemed Caucasian today were not thought to be

13

of the same race at the time § 1981 became law"); *see also Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp. 2d 746, 754 (S.D. Tex. 2007). Furthermore, prior to *Saint Francis*, the Fifth Circuit had already declared that "while discrimination purely on the basis of national origin" does not create a cause of action under section 1981, this court has held that a complaint by Mexican-Americans alleging racial and ethnic discrimination 'clearly states a cause of action' under [Section 1981]." *Bullard v. OMI Georgia, Inc.* 640 F.2d 632, 634 (5th Cir. 1981) (citing *Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971)). The Court does not find, therefore, that Plaintiff cannot state a claim for discrimination under Section 1981 on these grounds.

**D.     Causes of Action under Title VII and Section 1981**

The Court first notes that Title VII and section 1981 generally require the same proof to establish liability. *See Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 403-04 n. 2 (5th Cir. 1999). Thus, in analyzing Plaintiff's Section 1981 claims in this section, the Court will apply the Title VII standard of proof. The Court acknowledges that Plaintiff's Section 1981 claims only encompass Plaintiff's race-based allegations.

**1.     Hostile Work Environment**

To establish a prima facie case of hostile work environment, Plaintiff must show that she: 1) belongs to a protected group; 2) was subjected to unwelcome harassment; 3) the harassment was based on race, national origin, and/or sex; 4) the harassment affected a term or privilege of employment; and 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See, e.g., Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). The Fifth Circuit has found that "for harassment to be actionable, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). In determining whether a hostile work environment exists, the Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "For a hostile working environment to be deemed sufficiently hostile, all of the circumstances must be taken into consideration. Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts." *Id.* at 268.

In briefing, Defendants argue that Plaintiff has failed to allege any adverse employment actions, as required to make a prima facie case of intentional discrimination or retaliation. Defendants do not, however, seem to argue that Plaintiff has failed to state a prima facie case for hostile work environment. The Court will not, therefore, dismiss Plaintiff's Title VII and Section 1981 claims for hostile work environment.

### 2.    Retaliation

Plaintiff claims that Defendant HFT retaliated against her for complaining about harassment and for initiating a charge of discrimination with the EEOC and Texas Workforce Commission Civil Rights Division.

A plaintiff may establish a prima facie case of unlawful retaliation by demonstrating: "1) [s]he engaged in protected activity, 2) [s]he suffered an adverse employment decision, and 3) a causal link exists between the protected activity and the adverse employment decision."[7] *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). Although the Fifth Circuit previously had determined that only "ultimate employment decisions" qualified as the adverse

---

[7] The Supreme Court recently held that a plaintiff may state a claim for employment-related retaliation under Section 1981. *See CBOCS West, Inc. v. Humphries*, --- S. Ct. ----, 2008 WL 2167860, at *10-12 (May 27, 2008).

employment action necessary to establish a prima facie case of retaliation, *see, e.g., Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir. 1997), the Supreme Court has since held that the anti-retaliation provision of Title VII protects a plaintiff from actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); *see also McCoy v. City of Shreveport,* 492 F.3d 551 (5th Cir. 2007) (acknowledging the Supreme Court's abrogation of the Fifth Circuit approach to retaliation).

Defendants argue that Plaintiff has failed to allege adverse employment actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. In her Complaint, Plaintiff alleges that Defendants took the following retaliatory actions. HFT President Fallon began assigning her more work than other employees, began micro-managing and strictly disciplining her for minor infractions, refused to intervene when other workers began ostracizing her, and refused to intervene when Plaintiff complained about ongoing harassment by Pintar. (Second Am. Compl. ¶ 20.) HFT continued to assign Pintar to the same late duty night as Covalt. (*Id.*) Defendant Pintar continued making false accusations against Plaintiff and Fallon singled out Plaintiff for reprimands and investigations, "making numerous inquiries to school principals and others for whose union affairs Plaintiff has responsibilities." (*Id.*)

The *Burlington Northern* Court emphasized that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." 548 U.S. at 68. Furthermore, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* Some of the actions alleged by Covalt—for example, Defendant's failure to intervene when she was ostracized by co-workers—seem to fall within the

realm of "petty slights" contemplated in *Burlington Northern*.  548 U.S. at 68 (citing "snubbing"

by supervisors and co-workers as an example of a petty slight or minor annoyance).  The Court

stressed, however, that:

> [T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."

*Id.* at 69 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).  Taking

as true Plaintiff's allegations that she was singled out for reprimands, disciplined for minor

infractions, and subject to investigations that involved inquiries to individuals for whose union

affairs she was responsible, the Court finds that Plaintiff has at least adequately pled adverse

employment actions that might well have dissuaded a reasonable worker from making or

supporting a charge of discrimination.  In reaching this conclusion, the Court takes into account

that to survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations" but

instead only must allege facts that, when assumed to be true, "raise a right to relief above the

speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp.

v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  The Court will not, therefore, dismiss Plaintiff's

claims of retaliation.[8]

Because the Court finds that Plaintiff's Second Amended Complaint, on its face, states a

claim for retaliation, it need not consider the arguments and documents submitted by Plaintiff in

her supplemental response.  (Doc. No. 66.)  The Court notes Defendant HFT's objection to this

---

[8] Defendants argues that Plaintiff failed to exhaust administrative remedies under Title VII for those claims that arose after Plaintiff filed her charge with the EEOC.  The Fifth Circuit has held, however, that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir.1981).

evidence.  For reasons urged by Defendant HFT, Plaintiff's supplemental response is **STRICKEN**; no sanctions will be imposed.

### 3.   Intentional Discrimination

It is not entirely clear from the face of the Complaint whether Plaintiff intends to state a claim of intentional discrimination based on race, sex, and/or national origin.   The language that comes closest to indicating such an intent is found in paragraph 29 of the Second Amended Complaint, which is entitled Count 3: Racial/Ethnic/Sexual *Harassment*.  The bulk of Plaintiff's complaint and briefing is devoted to her claims for retaliation and hostile work environment.  To the extent that Plaintiff intends to assert such a claim, the Court finds that her claims would fail because Plaintiff has not alleged that she was subjected to an ultimate employment action.

To establish a prima facie case of race discrimination, a plaintiff must show: "(1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position; (3) plaintiff suffered an adverse employment action, and (4) plaintiff was replaced with a person who is not a member of the protected class." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).  The Fifth Circuit "has a strict interpretation of the adverse employment element of [a plaintiff's] prima facie intentional discrimination case," and has found that "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (citing *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).  Instead, an adverse employment action for purposes of establishing intentional discrimination has been found to consist of "'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'"[9] *Id.* (citing *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).

---

[9] The *Pegram* court recognized that "in the aftermath the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), it is an open question in this court whether, and to what extent, those decisions, 'lower the bar' for what comprises an 'ultimate employment

The Fifth Circuit reaffirmed the "ultimate employment action" standard in 2007, finding that the Supreme Court's interpretation of "adverse employment action" in *Burlington Northern* was expressly limited to retaliation claims. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 -560 (5th Cir. 2007) ( "[O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII discrimination claims.").

Although the Court has found that Defendant HFT took materially adverse employment actions against Plaintiff for purposes of her retaliation claim, the employment actions alleged in the complaint do not rise to the level of "ultimate employment actions" as defined by the Fifth Circuit.  Plaintiff does not claim that she was fired, demoted, re-assigned, or that her compensation or benefits were affected by Defendants' actions.  In at least one unpublished, non-precedential opinion, the Fifth Circuit found that "[p]erformance reviews and investigations . . . do not qualify as ultimate employment actions." *Cardenas-Garcia v. Texas Tech University*, 118 Fed. Appx. 793, 794, 2004 WL 2862319, at *1 (5th Cir. 2004).  Although the Fifth Circuit has at least mentioned the possibility that it might need to "'lower the bar' for what comprises an 'ultimate employment action,'" it has not yet done so.  The Court therefore finds that Plaintiff has failed to state a claim for intentional discrimination under Title VII and Section 1981 because she has not alleged an "ultimate employment action."

### G.    Breach of Contract Claim

Plaintiff has alleged a claim for breach of contract under Section 301 of the LMRA, which permits an employee to file a federal cause of action against an employer for breach of a collective bargaining agreement.  29 U.S.C. § 185; *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561 (1976) ("Section 301 contemplates suits by and against individual employees

---

decision.'" 361 F.3d at 282 n. 8.  The Court declined to reach that question, however, finding that the action at issue in that case would, in fact, constitute an ultimate employment action. *Id.*

as well as between unions and employers. . . ."). However, the Supreme Court has made clear that employees generally must exhaust grievance procedures provided for in the CBA. *See, e.g.*, *United Paperworkers International Union, AFL-CIO v. MISCO, Inc.*, 484 U.S. 29, 37 (1987) ("[W]here the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."); *Vaca v. Sipes*, 386 U.S. 171, 184 (1967) ("[I]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) (an employee "may not completely sidestep available grievance procedures in favor of a lawsuit . . . [because doing so] would deprive the employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances."). Courts have recognized certain exceptions to the exhaustion rule. For example, parties may expressly agree that the arbitration or grievance process is not the exclusive remedy for breach of contract claims. *See Daigle v. Gulf State Utilities Co., Local Union Number 2286*, 794 F.2d 974, 977 (5th Cir. 1986). Such an agreement must be *express*:

> Use of the permissive "may" does not of itself reveal a clear understanding between the contracting parties that the individual employees . . . are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation.

*Republic Steel*, 379 U.S. at 657-58. Furthermore, no exhaustion is required if:

> (1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; or (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group which is in large part chosen by the [employer and union] against whom [his] real complaint is made.

*Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (summarizing exceptions recognized by the Supreme Court (internal quotation marks and citations omitted)).

Plaintiff has not alleged that the union violated its duty of fair representation or that Defendant HFT's conduct amounts to a repudiation of the remedial procedures specified in the CBA. In her complaint, Plaintiff claims that the grievance procedures are not mandatory and that resort to the grievance procedures would have been futile. In briefing on the pending motion, Plaintiff does not pursue these arguments.[10] Instead, she appears to argue, first, that she did grieve some of her claims. Plaintiff argues, second, that she should not be required to grieve her claim that HFT breached the settlement of those first claims, alleging that doing so would have trapped her in a "proverbial hamster wheel," requiring her to endlessly resort to grievance mechanisms and forever barring her from pursuing her claims in federal court.[11]

The Court agrees that Plaintiff exhausted her remedies for claims prior to December 2005. Nonetheless, an employee is usually "bound by the [grievance] procedure's result unless he proves the union breached its duty of fair representation." *Daigle*, 794 F.2d at 977 (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976)); *see also DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164 (1983); *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 850 (5th Cir. 1989). Plaintiff has not claimed that the union breached its duty of fair representation. Plaintiff is therefore bound by the result of the grievance procedure, and may not pursue a Section 301 breach of contract claim as to those claims.

---

[10] Nor does the Court believe such arguments would be successful. The CBA does not reflect an express agreement that the grievance procedure is not mandatory. Plaintiff did grieve some of her claims, but failed even to attempt to grieve those claims that arose after December 2005, including her claim that she was retaliated against for filing an EEOC charge. *See Parham v. Carrier Corp.*, 9 F.3d 383, 390-91 (5th Cir. 1993) ("Although a disgruntled employee may bring a suit without first exhausting available grievance procedures if exhaustion of those remedies would be futile, such an employee may not simply assert that his use of grievance procedures would have been futile: he must ordinarily at least have attempted to use them.")

[11] Plaintiff does not cite a single case or provision of the CBA in making her arguments.

Plaintiff argues, however, that Defendant HFT breached the settlement agreement and that she should be able to pursue a claim against them under Section 301 for that breach. Defendant argues that if HFT breached the settlement, Plaintiff was required to return to the grievance process to address that breach.  At least some courts have allowed plaintiffs to pursue Section 301 claims to enforce a final and binding settlement reached at any stage of a grievance process.  *See, e.g., United Mine Workers of America, Dist. No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1097-98 (3d Cir. 1977).  Parties have not briefed the Court on whether the settlement agreement at issue in this case should be considered final and binding.  Nonetheless, Plaintiff fails to state a claim for breach of contract because there is no indication that Defendant HFT actually breached the settlement agreement.

The settlement agreement states that Management would "tell all staff to cease all sexual or ethnic or racial remarks or actions in the presence of Rosemary Covalt" and that management would "review the office decorum policy with all staff at a staff meeting during January." (Second Am. Compl. ¶ 17; Doc. 43, Ex. 2F.)  Plaintiff does not appear to deny that HFT management took these steps.  (*See* Doc. 43, Ex. 2G.)  Instead, Plaintiff seems to argue that Fallon and Pintar began retaliating against her after the settlement agreement, that Pintar and others continued to engage in harassing behavior, and that Defendant HFT did not take action to end the discrimination and harassment of Plaintiff.  (Second Am. Compl. ¶ 20, 32.)  To the extent that Plaintiff was retaliated against or faced additional harassment after the first settlement agreement, the Court agrees that Plaintiff was required to grieve those claims.  She did not. Therefore, Plaintiff has failed to state a claim for breach of contract under Section 301 of the LMRA.

## III.    REQUEST FOR EXTENSION OF TIME

At the request of Defendant Pintar, the Court previously ordered the suspension of certain discovery until it decided this Motion. (Doc. No. 67.)  As a result of the new discovery deadline, Defendant HFT has asked the Court to enter a new scheduling order extending, among other things, the dispositive motions deadline and trial date.  (Doc. No. 69.)  The Court agrees that a new scheduling order is appropriate.  Given that Plaintiff may oppose some or all of the scheduling order proposed by Defendant HFT, the Court will set a short hearing to discuss the new deadlines.  The parties will be notified of the date and time for that hearing by separate order.  Parties are welcome to participate in the hearing by phone.

## IV.   SANCTIONS

At a February 2008 status conference, the Court noted that Defendants had incurred considerable costs due to Plaintiff's multiple amendments and decision to re-file a state lawsuit against Pintar, and informed the parties that it would consider assessing attorneys fees and costs. After considering the Second Amended Complaint and the pending Motion to Dismiss, the Court declines to assess attorneys' fees and costs against Plaintiff.  This does not mean that attorneys' fees and costs will be denied at the conclusion of this proceeding.  That will depend on, among other things, the litigants' conduct henceforth.

## V.   CONCLUSION

For the reasons provided in this Order, Defendants' Motion to Dismiss, Doc. No. 43, is **DENIED IN PART AND GRANTED IN PART**.  Plaintiff's claims against Defendant Pintar are **DISMISSED** without prejudice.    Plaintiff's breach of contract claim and claim for intentional discrimination under Title VII and Section 1981 against Defendant Houston Federation of Teachers is **DISMISSED**.  The Court will not dismiss, however, Plaintiff's Title

VII and Section 1981 claims for hostile work environment and retaliation brought against Defendant Houston Federation of Teachers.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 4 day of June 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.